United States District Court
Southern District of Texas

**ENTERED**

April 01, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DENISE CELIOUS, | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 22-811 |
| | § |
| WORLEY LIMITED, | § |
| | § |
| Defendant. | § |
| | § |
| | § |

**MEMORANDUM AND OPINION**

Denise Celious claims that her former employer paid her less than her colleagues because of her sex (female) and race (black).  The employer, Worley Limited, moves for summary judgment on all claims.  (Docket Entry No. 31).  Ms. Celious responded, (Docket Entry No. 32),[1] and Worley replied, (Docket Entry No. 36).  Worley has also moved to strike some of Ms. Celious's summary judgment evidence.  (Docket Entry No. 35).[2]

Based on the motion and briefing, record, oral argument, and applicable law, summary judgment is denied on the Equal Pay Act claim and granted for Worley on the § 1981 claim.  The reasons for these rulings are below.

I.      **Background**

Denise Celious graduated from Prairie View A&M in 1978 with an engineering degree.  (Docket Entry No. 32-1 at ¶ 2).   In October 2006, Ms. Celious began working for Jacobs

---

[1] Ms. Celious's "Motion for Leave to Have Her Response to Defendant's Motion for Summary Judgment Be Fully Considered," (Docket Entry No. 34), is granted.  The court has fully considered Ms. Celious's response to Worley's summary judgment motion.

[2] To the extent they are not otherwise addressed in this opinion, Worley's evidentiary objections are overruled.

Engineering.  (*Id.* at ¶ 3).  Worley purchased Jacobs Engineering in 2019, assuming all of Jacobs's liabilities.  (*Id.*); (Docket Entry No. 31 at 1–2);[3] *see also* (Docket Entry No. 31-1 at 1).  Ms. Celious worked for Worley until July 2, 2020, when she was terminated as part of a workforce reduction due to the Covid-19 pandemic.  (Docket Entry No. 32-2 at 12–14).  From the end of 2018 until she was terminated, Ms. Celious's annual base salary was $184,311.  (*Id.* at 10).

From 2013 to 2020, Ms. Celious was a Project Engineer.  (Docket Entry No. 31-1 at ¶ 3). In Ms. Celious's affidavit, she testified that she "performed all of the duties and tasks expected of other Project Engineers assigned out of the Houston office" and "consistently received performance evaluation scores that were above average."  (*Id.* at ¶¶ 7, 10).  Ms. Celious testified that in 2014 and 2015, she also acted as a Project Manager overseeing male Project Engineers. (*Id.* at ¶ 9).

In 2017, the Office of Federal Contract Compliance Programs ("OFCCP") began investigating Jacobs for lack of compliance with Executive Order 11246, as amended, and the implementing regulations related to employment discrimination.  (Docket Entry No. 31-1 at 1).  In June 2020, after Worley purchased Jacobs, OFCCP sent a Pre-Determination Notice to Worley finding that Jacobs was out of compliance.  (*Id.*).  The OFCCP's findings are summarized as follows:

---

[3] The only record evidence Worley cites in its summary judgment motion is a conciliation agreement between the Office of Federal Contract Compliance Programs and Worley, described further below. Worley asserts other facts that that are not attributed to the conciliation agreement and have no citations to the record or other support.  Worley's unsupported factual assertions are relied on when uncontested.

### III.    DISCRIMINATION FINDINGS

> <u>FINDINGS</u>: OFCCP determined that, based on a statistical analysis of a snapshot of
> compensation data from December 31, 2016, statistically significant disparities existed
> at the Houston facility which impacted females, blacks, and Hispanics in the following
> job families: 12 females, 11 Hispanics, and seven blacks in Controls Systems
> Engineering; seven females in Project Engineering; six females in Quality Control
> (Supplier Surveillance); and six females in Scheduling/Planning, which is in violation of
> 41 C.F.R. 60-1.4(a)(1).

(*Id.* at 3); *see also* (Docket Entry No. 31 at 2).

In June 2021, Worley entered a Conciliation Agreement with OFCCP to resolve the identified gender- and race-based pay disparities. *See* (Docket Entry No. 31-1). Under the Conciliation Agreement, Worley agreed to pay back wages to the employees whom the OFCCP identified as having been undercompensated. (*Id.* at 4–6). Worley did not admit liability, and there was no adjudication of the alleged violations on the merits. (*Id.* at 3).

In July 2021, Ms. Celious received a "Notice to Affected Class Members" notifying her of the Conciliation Agreement and the OFCCP's findings related to gender- and race-based pay disparities. (Docket Entry No. 16 at 10); (Docket Entry No. 32-1 at ¶ 11). The Notice informed Ms. Celious that she "may be eligible to receive a payment representing back pay and interest." (Docket Entry No. 16 at 10).

In September 2021, Worley offered to pay Ms. Celious $3,200 as back pay. *See* (Docket Entry No. 32-1 at ¶ 12). Ms. Celious did not accept the offer because "she understood it would require [her] to release Jacobs and Worley from any liability for their unlawful treatment of [her]" and she was "fairly certain" that the $3,200 "was not nearly as much as [she] had been underpaid." (*Id.*).[4] In March 2022, Ms. Celious sued Worley. (Docket Entry No. 1). The operative complaint alleges that Worley (1) violated the Equal Pay Act by undercompensating her because of her

---

[4] Worley objects to this evidence as speculative, vague, unsupported by evidence, and based a "misunderstanding of the OFCCP's findings." (Docket Entry No. 35 at 5). Those objections are overruled.

3

gender; and (2) violated 42 U.S.C. § 1981 by undercompensating her because of her race.  (Docket Entry No. 16).

## II.    The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party."  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c).  "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'"  *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

## III.    Analysis

### A.    The Equal Pay Act Claim

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Ms. Celious's Equal Pay Act claim. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021). "Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of pay discrimination." *Id.* To make a prima facie case of wage disparity under the Equal Pay Act, Ms. Celious "must show that 'she performed work in a position requiring equal skill, effort and responsibility under similar working conditions,' and that

she 'was paid less than members of the opposite sex.'" *Id.* (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986)).[5] "To establish that her male counterparts engage in 'equal work,' the plaintiff need only prove that the 'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.'" *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 849 (S.D. Tex. 2011) (quoting *Jones*, 793 F.2d at 723).

If Ms. Celious makes a prima facie case, the burden shifts to Worley "to put forth a legitimate, non-discriminatory reason for the pay disparity." *Lindsley*, 984 F.3d at 467.

> The [Equal Pay Act] establishes four exceptions—three specific and one a general catchall provision—where different payment to employees of opposite sexes is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

*Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) (quotation marks omitted); 29 U.S.C. § 206(d)(1). "The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

Ms. Celious has presented evidence that all Project Engineers in Jacobs's Houston office, including her, were expected to adhere to the company's Houston Office Technical Guideline for Project Engineering Roles and Responsibilities.  (Docket Entry No. 32-1 at ¶ 6); *see also* (*id.* at 6–11).[6]  Ms. Celious contends that, while performing the duties of a Project Manager and overseeing male Project Engineers, she gained personal knowledge that her work required equal or greater

---

[5] Worley does not contest that it is subject to the Equal Pay Act.

[6] Worley objects that this evidence has not been properly authenticated because Ms. Celious "is not a custodian of record for Jacobs or Worley."  (Docket Entry No. 35 at 3, 5).  That objection is overruled: Ms. Celious's affidavit establishes that she has personal knowledge of the policy and could provide "[t]estimony that [the policy] is what it is claimed to be."  *See* FED. R. EVID. 901(b)(1); *see also* FED. R. CIV. P. 56(c)(2), (4).  Worley's separate objections to Ms. Celious's testimony about her job duties as unsupported by fact, conclusory, and speculative are also overruled.

skill, effort and responsibility than that of her male counterparts, under similar or more difficult working conditions. (*Id.* at ¶ 9). According to Ms. Celious's affidavit, she "performed all of the duties and tasks expected of other Project Engineers assigned out of the Houston office" and "consistently received performance evaluation scores that were above average." (*Id.* at ¶¶ 7, 10). Worley presents no contrary evidence. Ms. Celious has shown that she "performed work in a position requiring equal skill, effort and responsibility under similar working conditions" as male Project Engineers. *See Lindsley*, 984 F.3d at 466 (quoting reference omitted).

Ms. Celious must also point to evidence showing that she "was paid less than members of the opposite sex." *See id.* (quoting reference omitted). The Conciliation Agreement states: "OFCCP determined that, based on a statistical analysis of a snapshot of compensation data from December 31, 2016, statistically significant disparities existed at the Houston facility which impacted females, blacks, and Hispanics." (Docket Entry No. 31-1 at 3). The Notice sent to Ms. Celious states that the pay disparities extended back earlier than 2016: "OFCCP's analysis showed that since April 1, 2013, Worley has paid certain female, black, and Hispanic employees in the Project Engineering significantly less per year than [OTHER FAVORED GROUPS] males in similar roles at the same location." (Docket Entry No. 16 at 10) (bracketed language in original). OFCCP identified Ms. Celious as one of the "seven females in Project Engineering" impacted by the pay disparities. (Docket Entry No. 31-1 at 3, 11). Worley does not present any contrary evidence. Nor does Worley seem to dispute that Ms. Celious was subject to gender-based pay disparities as of December 31, 2016. *See* (Docket Entry No. 31 at 1) (claiming that Ms. Celious "has presented absolutely no evidence of discrimination *since 2016*" (emphasis added)). Based on the OFCCP's undisputed findings, Ms. Celious has shown that she was paid less than male Project Engineers before January 1, 2017. *Cf. Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*,

261 F.3d 542, 546–47 (5th Cir. 2001) (unrebutted statistical analyses supported jury's finding of unequal pay based on sex).

As for discriminatory compensation after January 1, 2017, the record is sparse. Ms. Celious argues that, because the pay disparity existed in 2016 and there is no evidence of corrective action until a year after she left, the pay disparity must have continued through her employment. Because no reparations were made, Ms. Celious argues that each paycheck she received after December 31, 2016, was a new instance of disparate compensation for equal work. Worley responds that it is entitled to an inference that the pay disparity was corrected because Worley purchased Jacobs in 2019 and was subject to review and oversight by OFCCP after that. The Conciliation Agreement includes a timeline of corrective actions that Worley planned to take between June 2021 and June 2023. (Docket Entry No. 31-1 at 13–15).

The evidence does not support the inference that Worley asks this court to draw. Ms. Celious has submitted evidence that her base annual salary did not change after the end of 2018, shortly before Worley purchased Jacobs. (Docket Entry No. 32-2 at 10). Although Worley's counsel stated at the hearing that Ms. Celious's pay would have changed multiple times throughout 2019 and 2020 due to the variable nature of her work, there is no record evidence of changes in her compensation to correct the pay disparity after Worley purchased Jacobs. The Conciliation Agreement states that OFCCP shared its findings with Worley in June 2020, the month that Ms. Celious was terminated. (Docket Entry No. 31-1 at 1). There is no record evidence that Worley was involved in or aware of the investigation before then. The timeline of Worley's corrective action begins after Ms. Celious was terminated.

The evidence is that Ms. Celious was paid less than male Project Engineers as of December 2016. (*Id.* at 3). The Notice sent in 2021 stated that pay disparities among Project Engineers had

existed "since April 1, 2013." (Docket Entry No. 16 at 10). No corrective action was taken until after Ms. Celious left Worley. *See* (Docket Entry No. 31-1 at 13). Ms. Celious has raised a fact issue as to whether she was paid less than her male colleagues through her departure in June 2020.

Because Ms. Celious has made a prima facie case of illegal wage disparity under the Equal Pay Act, the burden shifts to Worley to "put forth a legitimate, non-discriminatory reason for the pay disparity." *See Lindsley*, 984 F.3d at 467. Worley has pleaded that its actions "were based on legitimate, non-discriminatory and non-retaliatory reasons." (Docket Entry No. 20 at 6). However, Worley's summary judgment motion does not explain what those reasons were or provide any evidence in support.

Ms. Celious has presented unrebutted evidence that she was paid less than male Project Engineers for performing equal work. Worley has not offered any explanation for that pay disparity. Accordingly, Worley is not entitled to judgment as a matter of law on Ms. Celious's Equal Pay Act claim.

### B.    The 42 U.S.C. § 1981 Claim

Ms. Celious claims that Jacobs and Worley interfered with her right to "make and enforce contracts" by unlawfully undercompensating her because of her race, in violation of 42 U.S.C. § 1981. (Docket Entry No. 16 at ¶ 23).

"To establish a section 1981 claim, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). "A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence." *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 201 (5th Cir. 2008) (per curiam). Because Ms. Celious has not presented direct

evidence of discrimination, this court applies the *McDonnell-Douglas* burden-shifting framework to her § 1981 claim. *See id.* at 201 & n.3.

Ms. Celious can make a prima facie showing of discrimination under § 1981, creating a rebuttable presumption of intentional discrimination, by showing: "(1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013);[7] *see also Chacko v. Texas A&M Univ.*, 960 F. Supp. 1180, 1187 (S.D. Tex. 1997), *aff'd* 149 F.3d 1175 (5th Cir. 1998).

As detailed above, Ms. Celious has presented evidence of factor one—she is a member of a racial minority—and factor two—she was qualified as a Project Engineer. She argues that the "OFCCP's lengthy evaluation of [Worley] establish[es] the third and fourth factors, as it resulted in a finding that [Ms. Celious] was paid 'significantly less per year than [[more favored]] males in similar roles at the same location.'" (Docket Entry No. 32 at 25) (bracketed material added by Ms. Celious) (citing the Notice and the Conciliation Agreement). Worley argues that the OFCCP's findings are insufficient to create a genuine factual dispute that but for Ms. Celious's race, she would have been paid more. (Docket Entry No. 31 at 9). Neither party explains why the OFCCP analysis does or does not satisfy Ms. Celious's burden to make a prima facie showing that she was treated differently than similarly situated employees.

---

[7] Although *Haire* was a Title VII case, "[c]laims of race-based discrimination brought under § 1981 are governed by the same framework applied to claims of employment discrimination brought under Title VII." *Anderson v. Sikorsky Support Servs., Inc.*, 66 F. Supp. 3d 863, 871 (S.D. Tex. 2014).

"The Fifth Circuit defines 'similarly situated' narrowly." *Washington v. Nat'l Oilwell Varco, L.P.*, 634 F. Supp. 3d 316, 322 (N.D. Tex. 2022) (alteration adopted) (quoting reference omitted). "Similarly situated individuals must be 'nearly identical' and must fall outside the plaintiff's protective class." *Id.* (quoting reference omitted). Statistics showing discrimination in compensation are relevant in pay disparity cases, but "their usefulness depends on all of the surrounding facts and circumstances." *See Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1285 (5th Cir. 1994) (quoting reference omitted); *Siler-Khodr*, 261 F.3d at 546–47; *see also Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1139 (5th Cir. 1983) (remanding for the district court "to determine the exact nature of the[] OFCCP 'findings,'" including whether they showed "widespread unjustified discrimination in compensation").

The findings described in the Conciliation Agreement do not give any context for the analysis underlying the conclusion that "statistically significant disparities existed at the Houston facility which impacted females, blacks, and Hispanics." *See* (Docket Entry No. 31-1 at 3). There is no evidence of what control variables were used, or who was included in the sample. Although the OFCCP analysis identified "11 Hispanics" and "seven blacks" in Controls Systems Engineering who were undercompensated, the findings within Project Engineering were that "seven females" were subject to statistically significant pay disparities. (*Id.* at 3). Of these "seven females," two were black, three were white, one was Asian, and one was Hispanic. (*Id.* at 11). There is not enough information for the court to assess whether the OFCCP's analysis compared Ms. Celious to "nearly identical" coworkers *of a different race*. And unlike the Equal Pay Act claim, there is no record evidence comparing Ms. Celious to non-black Project Engineers. Her affidavit compares her work to that of male Project Engineers, without identifying their races. *See*

(Docket Entry No. 32-1 at 2–3).  Ms. Celious has failed to raise a fact dispute as to whether she was undercompensated compared to similarly situated non-black Project Engineers.

Because Ms. Celious has failed to make a prima facie showing that she was undercompensated due to her race, her § 1981 claim is dismissed.

### C.    The Statute of Limitations

Contrary to Worley's assertion, the Equal Pay Act claim is timely.[8]  An action under the Equal Pay Act must be commenced within two years after the cause of action accrued, or within three years for a willful violation.  29 U.S.C. § 255(a).  "Sex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act."  *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973).  Accordingly, an Equal Pay Act claim accrues "each time an employer presents an 'unequal' paycheck to an employee for equal work."  *See Barnett v. Louisiana Dep't of Health*, No. CV 17-1793, 2020 WL 1161091, at *12 (M.D. La. Mar. 10, 2020) (citing *Hodgson*, 475 F.2d at 1050); *see also Eubanks v. Veolia Water N. Am. Operating Servs., LLC*, No. 3:21-CV-357-KHJ-MTP, 2021 WL 4344889, at *6 (S.D. Miss. Sept. 23, 2021) ("Because Eubanks alleges a disparate pay claim [under the Equal Pay Act], her two-year statute of limitations started running from the moment of accrual: each time Veolia presented an allegedly unequal paycheck to Eubanks.").[9]

As detailed above, Ms. Celious has presented evidence of gender-based pay discrimination

---

[8] Because Ms. Celious has failed to raise a fact issue as to her § 1981 claim, the court need not address whether the § 1981 claim is timely.

[9] The Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which was subsequently overruled by the Lilly Ledbetter Fair Pay Act, did not abrogate Fifth Circuit case law as to when an Equal Pay Act claim accrues.  *See Ledbetter*, 550 U.S. at 640 (noting that the plaintiff's Equal Pay Act claim was not before the Court and, if the plaintiff had pursued the Equal Pay Act claim, "she would not face the Title VII obstacles that she now confronts").  After *Ledbetter*, district courts in this circuit have continued to apply the accrual rule established by the Fifth Circuit in *Hodgson* to Equal Pay Act claims.  *See, e.g.*, *Barnett*, 2020 WL 1161091, at *12; *Eubanks*, 2021 WL 4344889, at *6.

through June 2020, less than two years before she filed this lawsuit in March 2022.[10]  Her Equal

Pay Act claim is timely regardless of whether the two- or three-year statute of limitation applies.

## IV.    Conclusion

Summary judgment is denied on Ms. Celious's Equal Pay Act claim and granted to Worley

on the § 1981 claim.


SIGNED on March 31, 2025, at Houston, Texas.



_____
Lee H. Rosenthal
Senior United States District Judge

---

[10] Ms. Celious's response to Worley's summary judgment motion does not assert the discovery rule or any other basis for equitable tolling.  *Cf. Skiba v. Timothy*, No. 4:20-CV-02656, 2023 WL 11915621, at *4 (S.D. Tex. Mar. 21, 2023) ("The party seeking to toll limitations has the burden of proving the need for tolling."). Worley's counsel asserted at the hearing that the claims accrued when Ms. Celious received notice of the discriminatory pay.  According to Worley, Ms. Celious's claim that she was subject to discrimination throughout her employment "demonstrates knowledge of her allegations throughout her employment." (Docket Entry No. 31 at 7–8).  But a person can be discriminated against without knowing it at the time. Ms. Celious asserts, in both her pleading and her affidavit, that she first learned about the pay disparity when she received the Notice in July 2021.  (Docket Entry No. 16 at ¶ 18); (Docket Entry No. 32-1 at ¶ 11). Even under Worley's theory for when the claims accrued, Ms. Celious's claims are timely.

13